Dale Goodman, Esq.
Bankruptcy Trustee
1303 Hightower Trail
Suite 200
Atlanta, GA 30350

FILED
IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

JUL 07 2010 PM01:52

M. REGINA THOMAS,

RE:    Debtor Deborah Lynn Baker (Chapter 7 Petition # 10-79320)

**Motion for Relief of Stay**

To the Bankruptcy Trustee:

DEPUTY CLERK

Kerri L. Seagraves (Lessor) respectfully requests the Trustee to reject the unexpired residential lease between the Lessor and the Debtor Deborah Lynn Baker as soon as possible. The Lessor states the following:

1.  Kerri L. Seagraves is the Lessor of residential real estate at 439 Holland Springs Drive, Powder Springs, Georgia, 30127 to the Debtor. A copy of the lease between the Lessor and Debtor is attached to this request.

2.  The Debtor filed a petition under chapter 7 of the Bankruptcy Code on July 2, 2010.

3.  The Trustee may assume or reject unexpired leases pursuant to section 365 of the Bankruptcy Code. The Trustee Manual provides that "the trustee should promptly evaluate unexpired leases and executory contracts for potential value or detriment to the estate." United States Trustee Manual at 2-2.5.6. In any event and pursuant to section 365(d), the Trustee must reject or assume an unexpired residential lease within 60 days of the Debtor's chapter 7 petition.

4.  On June 28, 2010, the Lessor commenced a pre-petition Proceeding Against Tenant Holding Over in Magistrate Court, Cobb County, to recover possession of the premises described in the lease after providing all required notices to the Debtor. The Debtor's answer to this proceeding was due seven days from the commencement of the proceeding.

5.  The Debtor committed pre-petition breaches of the lease on February 1, 2010, April 1, 2010, May 1, 2010, June 1, 2010 and July 1, 2010 by failing to timely pay the rent due under the lease.

6.  As of the petition date, the Debtor owes Lessor $2,800 in past due rent and late fees provided by the lease. Rent of $1,300 is due on the first of each month under the lease, with a fee of $100 due in any month in which the rent is not timely paid. The next installment of rent is due August 1, 2010.

7.  The Lessor does not believe that the fair market rent of the premises exceeds the rent due under the lease.

For these reasons, the Trustee should reject the lease between the Lessor and Debtor as soon as possible.

Respectfully,

*Kerri Seagraves*

Kerri L. Seagraves
5549 Wright Road
Powder Springs, GA 30127
404-405-0222

cc:   Hicks, Casey & Foster, P.C.
      Bankruptcy Counsel for Debtor Deborah Lynn Baker
      136 North Fairground Street
      Suite 100
      Marietta, GA 30060

February 13, 2010

Deborah Baker
439 Holland Springs Road
Powder Springs, GA 30127

Dear Deborah,

I wanted to follow up with you regarding your lease this month and from this month on. I have contacted you by phone on Saturday, February 6th at 3:11 p.m. at the numbers 770-429-9977 and 678-333-3563 to discuss your late payment, your request to remove the dryer, and any maintenance issues that you have with the home. I left a message and have not received a returning phone call. According to the lease agreement, I should be able to contact you and have right to access the property within 24 hours of calling.

I did receive your letter on February 6, 2010 and want you to understand that as of February 17, 2010, I will not accept a rent payment after the 12th of the month. If the payment is paid after this date, I will ask for possession of my home and I will file a dispossessory action with the court at your expense. I am not obligated to accept any payments after the 6th of the month. In addition, you owe an extra $100.00 for paying after February 10, 2010.

Thanks,

Kerri Seagraves

(c) 404-405-0222

April 14, 2010

Deborah Baker
439 Holland Springs Drive
Powder Springs, GA 30127

RE: Notice of Eviction and Demand for possession of property located at: 439 Holland Springs Drive, Powder Springs, GA 30127

| April 2010 Rent: | $1300.00 |
| Late Fee: | $100.00 |
| Total Due Now in Certified Funds | $1400.00 |

Pursuant to your failure to pay the above listed delinquent charges this constitutes "demand for possession" of said Property and said charges immediately.

Said amounts must be paid within (3) days of the date of this notice. If said amount is not received within said time period, this letter constitutes "demand of possession" of the premises on the fourth (4) day after the date of the letter.

Be further advised that this letter constitutes "written notice" to you pursuant to Georgia Code Ann. 13-3-4 (Michie, 1983) that landlord requires payment of said amounts immediately. Since check number 1077 which was written on April 12, 2010 would not cash due to insufficient funds, full payment must be made in certified funds within (3) three days of the date of this notice or dispossessory proceedings will be immediately instituted. Once a warrant has been called in, an additional expense of $100.00 for processing, will be incurred in addition to the above listed monies.

Kerri Seagraves
5549 Wright Road
Powder Springs, GA 30127

May 11, 2010

Deborah Baker
439 Holland Springs Drive
Powder Springs, GA 30127

RE: Notice of Eviction and Demand for possession of property located at: 439 Holland Springs Drive, Powder Springs, GA 30127

| | |
|---|---|
| May 2010 Rent: | $1300.00 |
| Late Fee: | $100.00 |
| Total Due Now in Certified Funds | $1400.00 |

Pursuant to your failure to pay the above listed delinquent charges this constitutes "demand for possession" of said Property and said charges <u>immediately.</u>

Said amounts must be paid within (3) days of the date of this notice. If said amount is not received within said time period, this letter constitutes "demand of possession" of the premises on the fourth (4) day after the date of the letter.

Be further advised that this letter constitutes "written notice" to you pursuant to Georgia Code Ann. 13-3-4 (Michie, 1983) that landlord requires payment of said amounts <u>immediately.</u> The full payment must be made in certified funds within (3) three days of the date of this notice or dispossessory proceedings will be immediately instituted. The warrant will be filed on Friday, May 14, 2010. Once a warrant has been called in, an additional expense of $100.00 for processing, will be incurred in addition to the above listed monies.

Kerri Seagraves
5549 Wright Road
Powder Springs, GA 30127

June 14, 2010

Deborah Baker
439 Holland Springs Drive
Powder Springs, GA 30127

RE: Notice of Eviction and Demand for possession of property located at: 439 Holland Springs Drive, Powder Springs, GA 30127

| | |
|---|---|
| June 2010 Rent: | $1300.00 |
| Late Fee: | $100.00 |
| Total Due Now in Certified Funds | $1400.00 |

Pursuant to your failure to pay the above listed delinquent charges this constitutes "demand for possession" of said Property and said charges immediately.

Said amounts must be paid within (3) days of the date of this notice. If said amount is not received within said time period, this letter constitutes "demand of possession" of the premises on the fourth (4) day after the date of the letter.

Be further advised that this letter constitutes "written notice" to you pursuant to Georgia Code Ann. 13-3-4 (Michie, 1983) that landlord requires payment of said amounts immediately. The full payment must be made in certified funds within (3) three days of the date of this notice or dispossessory proceedings will be immediately instituted. Once a warrant has been called in, an additional expense of $100.00 for processing, will be incurred in addition to the above listed monies.


Kerri Seagraves
5549 Wright Road
Powder Springs, GA 30127

# PROCEEDING AGAINST TENANT HOLDING OVER

_____ CASE NO. _10-E-_____
_____
_____
(Plaintiff's Name, Address & Phone No.)

VS

_____
Deborah Baker
1341 Holland Springs Dr.
Powder Spgs, GA 30127
(Defendant's Name & Address)

[Filed stamp: 2010 JUN 17 AM 11:33 — CLERK MAGISTRATE COURT, COBB COUNTY, GA]

1. Defendant is in possession as tenant of premises at the address in Cobb County as stated above:
2. Affiant is the ( ) Owner, ( ) Attorney, ( ) Agent, ( ) Lessee of the owner of said premises.
3. Tenant
   (✓) fails to pay the rent which is now past due.
   ( ) holds the premises over and beyond the term for which they were rented or leased to him.
   ( )
4. Plaintiff is entitled to recover any and all rent that may come due until this action is finally concluded.
5. Plaintiff desires and has demanded possession of premises.
6. Defendant has failed and refused to deliver possession of premises.

   WHEREFORE, Plaintiff DEMANDS:
   (a) possession of the premises.
   (b) past due rent of $ 1300.00 ; 1300 + 100.00 late fee
   (c) rent accruing up to date of judgment or vacancy at the rate of $ 1300.00 per one month ;
   (d)

SWORN TO AND SUBSCRIBED BEFORE ME THIS
_____ DAY OF June , 20 10 .
_____
NOTARY PUBLIC OR ATTESTING OFFICER

(Affiant - Address & Phone No.)
_____
_____
Powder Spgs, GA 30127

## SUMMONS

TO: THE MARSHAL of the Magistrate Court of Cobb County or his lawful deputies and to the Sheriff of Cobb County or his lawful deputies.

GREETING:

The defendant(s) herein is/are commanded and required personally or by attorney to appear at the Magistrate Court of Cobb County, 32 Waddell Street, Marietta, Georgia, between the hours of 8:00 and 5:00 p.m. on or before the SEVENTH day from the date of service of the within affidavit and summons (or on the first business day thereafter IF the seventh day falls on Saturday, Sunday or legal Holiday) to answer the affidavit in writing or orally. If the answer is NOT made, a Writ of Possession and/or judgement shall issue instanter.
WITNESS the Honorable Judges of said Court.
The affidavit was sworn to and subscribed before the undersigned Deputy Clerk by the Affiant as provided by the Official Code of Georgia Annotated 44-7-50 and summons issued pursuant thereto.

_____
DEPUTY CLERK MAGISTRATE COURT OF COBB COUNTY

Defendant(s) to answer on or before _____
20_____ .

_____
DEPUTY MARSHAL

### "WRIT OF POSSESSION"

TO THE MARSHAL OF THE MAGISTRATE COURT OF COBB COUNTY OR HIS LAWFUL DEPUTIES AND TO THE SHERIFF OF SAID COUNTY OR HIS LAWFUL DEPUTIES:

You are hereby commanded to remove said defendant together with his property thereon from said house and premises and to deliver full and quiet possession of same to the plaintiff herein.

This day of _____ , 20_____ .

Tenant Ejected _____ , 20_____ .

_____ D.M.

JUDGE, MAGISTRATE COURT OF COBB COUNTY

Date of Service _____ , 20_____

10205-1019 6/93

**STATE OF GEORGIA**

CIVIL ACTION NO. ___10-E-3647___

**GEORGIA, COBB COUNTY**

Attorney or Plaintiff's Name & Address

Kera Groones
555 Wright Rd
Powder Spgs, GA 30127

Plaintiff

VS.

Name and Address of Party to be Served:

Deborah Baker
139 Holland Spgs Dr.
Powder Spgs, GA 30127

Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☑ I have this day served ............................................................................ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served ............................................................................ by leaving a copy of the action and summons at his most notorious place of abode in this County. Delivered same into hands of ............................................................................ describe as follows age, about ............ years; weight, about ............ pounds; height, about ............ feet and ............ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served ............................................................................ a corporation by leaving a copy of the within action and summons with ............................................................................ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above affidavit and summons on the defendant(s)/Party by posting a copy of the same to the door of the premises designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s)/Party at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s)/Party to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and ............................................................................ not to be found in the jurisdiction of this Court.

The defendant/Party is required to answer the summons on or before the ............ Day of ............, 20 ............

This ____ day of _____ , 20 _10_ .

_____
DEPUTY

WHITE: Clerk    CANARY: Plaintiff    PINK: Defendant

COBB COUNTY, GEORGIA

# LEASE FOR RESIDENTIAL PROPERTY
(NOT TO BE USED WITH LEASE/PURCHASE TRANSACTIONS)



Georgia Association of REALTORS

2009 Printing

In consideration of the mutual covenants set forth herein, this Lease (hereafter the term "Lease" and "Agreement" are used interchangeably) is entered into this date of **October 9, 2009** between **Kerri Seagraves** (hereinafter "Landlord") and **Deborah Baker**, (hereinafter "Tenant") Landlord leases to Tenant, and Tenant leases from Landlord, the residential dwelling with the following address: **439 Holland Springs Drive Powder Springs GA 30127** TAXPIN/ID# **na** and which may be further described in the plans, if any, attached hereto as Exhibit "A" (hereinafter "Premises") and which Premises constitute all or a part of the property described as follows:

**Legal Description.** [Select Section A. or B. below. The section not marked shall not be a part of this Agreement.]

☐ A. The legal description of the Property is attached as an exhibit hereto.

☑ B. The full legal description of the Property is the same as is recorded in the land records of the county in which the Property is located and is incorporated herein by reference. The legal description of the Property is more specifically described below and can be found in said land records in the following deed book or plat book, if filled in below:
Land Lot(s) **301** of the **20** District, **2** Section/ GMD,
Lot **61**, Block **na**, Unit **na**, Phase/Section **na** of
**Holland Springs** Subdivision/Development,
**Cobb** County, Georgia as recorded in:

☑ 1. Plat Book **186**, Page **86**, et. seq.;

OR

☐ 2. Deed Book _____, Page _____, et. seq.

If the Property extends beyond the boundaries of the Premises, Tenant shall have the right to use Property (except for any portion thereof, if any, intended for the exclusive use of another) subject to the terms of this Lease and any rules and regulations regarding the same.

1. **Term.** The initial term of this Lease shall begin on **October 16, 2009** ("Commencement Date"), and shall end on (and include) the following date: **October 16, 2011** ("Ending Date").

2. **Possession.** If Landlord is unable to deliver possession of Premises on the Commencement Date, rent shall be abated on a daily basis until possession is granted. If possession is not granted within **7** days of the Commencement Date, Tenant may, by giving notice to Landlord, terminate this Lease in which event Landlord shall promptly refund all deposits to Tenant. Neither Landlord nor Broker shall be liable for any delay in the delivery of possession of Premises to Tenant.

3. **Rent.** Tenant shall pay rent in advance in the sum of **One Thousand Three Hundred** Dollars ($ **1300** ) per month on the first day of each month during the Lease Term. The total rental amount due under this lease shall be $ **31200** and shall be paid at the following address: **5549 Wright Road, Powder Springs GA 30127** (or at such other address as may be designated from time to time by Landlord in writing). If the Commencement Date or the Ending Date is on the second day through the last day of any month, the rent shall be prorated for that month. Mailing the rent payment shall not constitute payment. Rent must be actually received by Landlord to be considered paid. Tenant acknowledges that all funds received will be applied to the oldest outstanding balance including but not limited to additional rent resulting from late payments of rent, fees associated with checks returned for insufficient funds, administrative fees, costs and fees associated with a dispossessory action, etc.

4. **Late Payment; Service for Returned Checks.** Rent not paid in full by **10** a.m. on the **5th** day of the month in which it is due shall be late. Landlord may, but shall have no obligation to accept any rent not received by the **6th** of the month. If late payment is made and Landlord accepts the same, the payment must be in the form of cash, cashier's check, certified check or wire transfer of immediately available funds and must include an additional rent amount of $ ~~100~~ **50**, and if applicable, a service charge of $ **25** for any returned check. Landlord reserves the right, upon notice to Tenant, to refuse to accept personal checks from Tenant after one or more of Tenant's personal checks have been returned by the bank unpaid.
   *If rent paid after 10th then the additional fee is $100.* X KS

5. **Dispossessory Fee.** Notwithstanding anything to the contrary contained herein, if Tenant owes any outstanding, additional rent and other fees and charges as of the **10** day of the month, Landlord may file a dispossessory action in the county in which the Property is located. In the event that a dispossessory action is filed against the Tenant, a fee of $ **50** will be assessed to Tenant to cover the costs of filing fees, court costs, attorney fees, plus an administrative fee of $ **50** per dispossessory action.

6. **Security Deposit.**
   A. Amount of Security Deposit: Tenant has paid a security deposit in the amount of $ **1500** ("Security Deposit") by
   ☑ check OR ☐ cash paid to ☑ Landlord OR ☐ Broker, the receipt of which is hereby acknowledged.

B. **Deposit of Security Deposit:** The Security Deposit shall be deposited within 5 (five) banking days of the Binding Agreement Date by the holder thereof ("Holder") into the type of account listed below or in such other escrow/trust account of which Holder has given notice of the bank to all parties and interest earned on such account shall belong to Holder. Neither the Landlord nor the Broker shall be liable for any damages of Tenant resulting from the failure or bankruptcy of any financial institution into which the Security Deposit is placed. *[Select one. The section not marked shall not be a part of this Agreement.]*
  ☐1. Security Deposit to be held in Escrow/Trust Account. The Security Deposit shall be deposited into the following escrow/trust account of ☐ Landlord OR ☐ Broker at _____ Bank.
  ☒2. Security Deposit to be held in Landlord's General Account *[This section should not be marked if Landlord is a real estate licensee, or if Landlord or Landlord's spouse or minor children own more than ten rental units.]* Tenant's Security Deposit will not be kept in a segregated or escrow/trust account but shall be co-mingled with other funds of Landlord. Tenant acknowledges that Broker shall owe no duty or obligation whatsoever to Tenant with regard to any Security Deposit held by Landlord including but not limited to ensuring that the Security Deposit is properly deposited, applied or returned.

C. **Security Deposit Check Not Honored:** In the event any Security Deposit check is not honored, for any reason, by the bank upon which it is drawn, Holder shall promptly notify all parties to this Agreement of the same. Tenant shall have 3 (three) banking days after notice to deliver good funds to Holder. In the event Tenant does not timely deliver good funds, Landlord shall have the right to terminate this lease upon notice to Tenant.

D. **Return of Security Deposit:** The balance of the Security Deposit shall be returned to Tenant by Holder within 30 (thirty) days after the termination of this Agreement or the surrender of Premises by Tenant, whichever occurs last (hereinafter "Due Date"); provided that Tenant meets the following requirements: (1) the full term of the Lease has expired; (2) Tenant has given a **30** day written notice to vacate; (3) no damage has been done to the Property or its contents, except for normal wear and tear; (4) the entire Property is clean and free of dirt, trash and debris; (5) all rent, additional rent, fees and charges have been paid in full; (6) there are no holes and scratches on walls or cabinets other than normal wear and tear; and (7) all apartment keys, keys to recreational or storage facilities, access cards and gate openers, if any, have been returned to Landlord.

E. **Deductions from Security Deposit:** Holder shall have the right to deduct from the Security Deposit: (1) the cost of repairing any damage to Premises or Property caused by the negligence, carelessness, accident or abuse of Tenant, Tenant's household or their invitees, licensees and guests; (2) unpaid rent, utility charges or pet fees; (3) cleaning costs if Premises is left unclean; (4) the cost to remove and dispose of any personal property; and/or (5) late fees and any other unpaid fees and charges referenced herein; (6) a fee of $ **0** to rekey the locks either at the request of Tenant or upon the termination of the Lease.

F. **Move-Out Statement:** Holder shall provide Tenant with a statement ("Move-Out Statement") listing the exact reasons for the retention of the Security Deposit or for any deductions there from. If the reason for the retention is based upon damage to Premises, such damages shall be specifically listed in the Move-Out Statement. The Move-Out Statement shall be prepared within 3 (three) banking days after the termination of occupancy. If Tenant terminates occupancy without notifying the Holder, Holder may make a final inspection within a reasonable time after discovering the termination of occupancy. Tenant shall have the right to inspect Premises within 5 (five) banking days after the termination of occupancy in order to ascertain the accuracy of the Move-Out Statement. If Tenant agrees with the Move-Out Statement, Tenant shall sign the same. If Tenant refuses to sign the Move-Out Statement, Tenant shall specify in writing, the items on the Move-Out Statement with which Tenant disagrees within 3 (three) banking days. For all purposes herein, a banking day shall not include Saturday, Sunday or federal holidays.

G. **Delivery of Move-Out Statement:** Holder shall deliver the Move-Out Statement, along with balance, if any, of the Security Deposit, before the Due Date. The Move-Out Statement shall either be delivered personally to Tenant or mailed to the last known address of Tenant via first class mail. If the letter containing the payment is returned to Holder undelivered and if Holder is unable to locate Tenant after a reasonable effort, the payment shall become the property of Landlord 90 days after the date the payment was mailed.

H. **Security Deposit Held by Broker:** If Broker is holding the Security Deposit, Broker shall be responsible for timely preparing the Move-Out Statement and delivering the same to Tenant along with the balance of the Security Deposit, if any, prior to the Due Date. In fulfilling its obligations hereunder, Broker shall reasonably interpret the Lease to ensure that the Security Deposit is properly disbursed.
Notwithstanding the above, if there is a bona fide dispute over the Security Deposit, Broker may, (but shall not be required to) upon notice to all parties having an interest in the Security Deposit, interplead the funds into a court of competent jurisdiction. Broker shall be reimbursed for and may deduct from any funds interpleaded its costs and expenses including reasonable attorneys' fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorneys' fees and court costs and the amount deducted by Broker from the non-prevailing party.
All parties hereby agree to indemnify and hold Broker harmless from and against all claims, causes of action, suits and damages arising out of or related to the performance by Broker of its duties hereunder. All parties further covenant and agree not to sue Broker for damages relating to any decision of Holder to disburse the Security Deposit made in accordance with the requirements of this Lease or to interplead the Security Deposit into a court of competent jurisdiction.

7. **Utilities.** Tenant acknowledges that all utilities and/or services are to be paid for by Tenant, with the exception of: **HOA Dues** _____. Tenant must connect or transfer utilities not provided by Landlord into the name of Tenant within **3** days of the commencement of Lease. At any time thereafter, Landlord may, without notice to Tenant, disconnect any utilities serving Premises which are in the name of Landlord and are not being provided by Landlord under this Lease. Landlord may, at Landlord's option, pay utilities and be reimbursed by Tenant as additional rent.

8. **Move-In Inspection.** Prior to Tenant tendering a Security Deposit, Landlord shall provide Tenant with "Move-In, Move-Out Inspection Form" attached hereto and incorporated hereinafter (the "Form") itemizing any existing damages to Property. Prior to taking occupancy, Tenant will be given the right to inspect Property to ascertain the accuracy of the Form. Both Landlord and Tenant shall sign the Form. Tenant shall be entitled to retain a copy of the Form. Tenant acknowledges that Tenant has carefully inspected Property in which Premises are located and is familiar with the same.

9. **Owner's Property Disclosure Statement.** Owner's Property Disclosure Statement ☐ is or ☒ is not attached to this Lease.

10. **Tenant's Responsibilities.**
    A. **Repairs and Maintenance:** Tenant acknowledges that Tenant has inspected Premises and that it is fit for residential occupancy. Tenant shall promptly notify Landlord of any dangerous condition or need for maintenance existing in Premises or on Property. Upon receipt of notice from Tenant, Landlord shall, within a reasonable time period thereafter, repair the following: (1) all defects in Premises or Property which create unsafe living conditions or render Premises untenable; and (2) to the extent required by state law, such other defects which, if not corrected, will leave Premises or Property in a state of disrepair. Except as provided above, Tenant agrees to maintain Premises in the neat, sanitary and clean condition free of trash and debris. Any expenses incurred by Landlord to remedy any violations of this provision shall be reimbursed to Landlord by Tenant within 30 (thirty) days of the receipt of an invoice from Landlord. If Tenant fails to timely pay said invoice Tenant shall be in default of this Agreement.
    B. **Missed Appointments:** From time to time it will be necessary for Management, Owner or other authorized parties including, but not limited to, maintenance contractors, appraisers, and real estate agents to gain access to the property for the purpose of inspecting the property, performing repairs, or showing the property to prospective purchasers or tenants. If Tenant fails to keep a pre-arranged, mutually agreed to appointment allowing access to the Property, then Tenant agrees to pay $ __100__ per event as liquidated damages to management and such amount shall become due as additional rent under this agreement.
    C. **Lawn and Exterior Maintenance:** *[Select one. The sections not marked shall not be a part of this Lease.]*
        ☒1. Tenant shall keep the lawn mowed and edged, beds free of weeds, shrubs trimmed, gutters cleaned out, trash and grass clippings picked up on a regular basis (minimum of once every two weeks in growing season and fall leaf season) and shall keep Property, including yard, lot, grounds, Premises, walkways and driveway clean and free of rubbish, trash and debris.
        ☐2. Partial maintenance by Tenant - Tenant shall maintain the following: _____
        _____
        ☐3. Landlord or Landlord's designated agent shall provide all yard/exterior maintenance.
    D. **Pest Control:** Landlord will be responsible for termite and rodent control. Other pest control (including ants, cockroaches, spiders and other insects) shall be handled as set forth below.
       *[Select one. The section not marked shall not be a part of this Agreement.]*
        ☐1. Landlord or Landlord's designated agent shall provide pest control services to Premises.
        ☒2. Landlord shall not provide pest control services to Premises and the same shall be the responsibility of Tenant.
    E. **Smoke Detector:** Tenant acknowledges that Premises is equipped with a smoke detector(s) that is in good working order and repair. Tenant agrees to be solely responsible to check the smoke detector every 30 (thirty) days and notify Landlord immediately if the smoke detector is not functioning properly.
    F. **Freezing of Pipes:** To help in preventing the freezing of pipes, Tenant agrees that when the temperature outside falls below 32°F, Tenant shall: (a) leave the thermostat regulating the heat serving Premises in an "on" position and set to a minimum of 60°F; and (b) leave the faucets dripping.
    G. **Mold and Mildew:** Tenant acknowledges that mold and/or mildew can grow in any portion of the Premises that are exposed to elevated levels of moisture and that some forms of mold and mildew can be harmful to their health. Tenant therefore agrees to regularly inspect the Premises for mold and/or mildew and immediately report to Landlord any water intrusion problems mold and/or mildew (other than in sinks, showers, toilets and other areas designed to hold water or to be wet areas). Tenant shall not block or cover any heating, ventilation, or air conditioning ducts located in the Premises.

11. **Early Termination by Tenant.** *[Select Section A. or B. below. The section not marked shall not be a part of this Lease.]*
    ☒ A. **Right to Terminate Early:** Provided Tenant is not in default hereunder at the time of giving notice, Tenant has strictly complied with all of the provisions of this paragraph, and termination is as of the last day of a calendar month, Tenant may terminate this Lease before the expiration of the term of the Lease by:
       *[Select the applicable sections below. The section not marked shall not be a part of this Agreement.]*
        ☒1. Giving Landlord no less than __60__ days notice on or before the day rent is due as shown in rent paragraph above; plus
        ☒2. Paying all monies due through date of termination plus the total amount of any and all deposits; plus
        ☒3. Paying an amount equal to ☒ __2__ month's rent or ☐ _____ % of the total remaining months on lease; plus
        ☒4. Return Premises in a clean and ready-to-rent condition; plus
        ☐5. Paying a $ _____ administration fee;
        ☐6. Other _____.
        Any notice for early termination must be signed by all Tenants. Tenant's election of early termination shall not relieve Tenant of responsibilities and obligations regarding damage to Premises or Property. Tenant may not apply the security deposit toward the payment of any of Tenant's financial obligations set forth in this Early Termination by Tenant Paragraph.
    ☐ B. **No Right of Early Termination:** Tenant shall not have the right to terminate this Lease early.
    C. **Military Activation:** Notwithstanding any provision to the contrary contained herein, if Tenant is called to active duty during the term of this Lease, Tenant shall present to Landlord the official orders activating Tenant; then and in that event, this Lease shall be controlled by the Service members' Civil Relief Act of 2003 as amended in 50 U.S.C.A. § 50-534.
    D. **Active Military:** If Tenant is on active duty with the United States military and Tenant or an immediate family member of Tenant occupying Premises receives, during the term of this Lease, permanent change of station orders or temporary duty orders for a period in excess of three months, Tenant's obligation for rent hereunder shall not exceed: (1) 30 (thirty) days rent after notice and proof of the assignment are given to Landlord; and (2) the cost of repairing damage to Premises or Property caused by an act or omission of Tenant. If Tenant is active military and presents to Landlord a copy of official orders of transfer to another military location, then and in that event, items 11.A.3 and 11.A.5 above shall not apply.

E. **Holding Over:** Tenant shall have no right to remain in the Property after the termination or expiration of this Lease. Should Tenant fail to vacate the Property upon the expiration or termination of this Agreement, Tenant shall pay Landlord a per diem occupancy fee of $ 35 for every day that Tenant holds over after the expiration or termination of this Lease. Acceptance of the occupancy fee by Landlord shall in no way limit Landlord's right to treat Tenant as a tenant at sufferance for unlawfully holding over and to dispossess Tenant for the same.

12. **Early Termination by Landlord.** Tenant agrees that Landlord may terminate the lease prior to the lease expiration date and Tenant agrees to vacate the property if the following conditions are met:
    A. Landlord gives tenant 60 (sixty) days written notice to vacate (Tenant still owes rent through the 60 (sixty) day notice period).
    B. Landlord pays to Tenant an amount equal to 2 month(s) rent as compensation for disturbing tenant quiet enjoyment of the property and for the inconvenience of moving early. This credit will be applied to the tenant account at the time the tenant vacates the property and will be included with any applicable security deposit refund. The foregoing shall not relieve the Tenant of his or her responsibilities and obligations regarding any damage to the property.

13. **Lead-Based Paint.** For any Premises located on Property built prior to 1978, Tenant acknowledges that Tenant has received, read, and signed the Lead-Based Paint Exhibit attached hereto and incorporated herein by reference.
    Initials _____

14. **Notice of Propensity of Flooding.** Landlord hereby notifies Tenant as follows: Some portion or all of the living space or attachment thereto on Premises has ☐ OR has not ☒ been flooded at least three times within the last 5 (five) years immediately preceding the execution of this Lease. Flooding is defined as the inundation of a portion of the living space caused by an increased water level in an established water source such as a river, stream, or drainage ditch, or as a ponding of water at or near the point where heavy or excessive rain fell.

15. **Renewal Term.** Either party may terminate this Lease at the end of the term by giving the other party 30 days notice prior to the end of the term. If neither party gives notice of termination, the Lease will automatically:
    *[Select one. The box not checked shall not be a part of this agreement].*
    ☒ be extended on a month-to-month basis with a rent increase of 15 % of the current rental rate and the new rent amount shall be known as the Current Rent. All other terms of the existing Lease remains the same. Thereafter, Tenant may terminate this Lease upon 60 days notice to Landlord and Landlord may terminate this Lease upon 60 (sixty) days notice to Tenant.
    ☐ renew for an additional term of _____ days beginning on the first day following the end of the preceding term unless either party gives notice to the other at least _____ days prior to end of the then current term of that party's decision to terminate the Lease at the end of the current term. This Lease may be automatically renewed for up to _____ additional terms. If this Lease has not been terminated during the final renewal term, this Lease will continue on a month to month basis until the same is terminated in accordance with Georgia Law.

16. **Sublet and Assignment.** Tenant may not sublet Premises in whole or in part or assign this Lease without the prior written consent of Landlord. This Lease shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Landlord and this Lease shall create a usufruct only.

17. **Use.** Premises shall be used for residential purposes only and shall be occupied only by the 3 (#) persons listed as follows: Deborah Baker and her two children
    Property shall be used so as to comply with all federal, state, county, and municipal laws and ordinances and any applicable declaration of condominium, declaration of covenants, conditions, and restrictions; all rules and regulations adopted pursuant thereto; and any community association bylaws, and rules and regulations.

18. **Nuisances and Unlawful Activity.** Tenant shall be responsible for ensuring that Tenant and members of Tenant's household and their invitees, licensees and guests comply with the Rules and Regulations applicable to Tenant set forth herein and any term, condition or provision of this Lease relating to the use of the Premises or Property and do not engage in any activity while on Property that is unlawful, would endanger the health and safety of others or would otherwise create a nuisance. In the event Tenant or any of the above-named parties are arrested or indicted for an unlawful activity occurring on Property and said charges are not dismissed within 30 (thirty) days thereafter, Tenant shall be deemed to be in default of this Lease and Landlord may terminate this Lease immediately. For the purpose of this Lease, an unlawful activity shall be deemed to be any activity in violation of local, state or federal law.

19. **Property Loss.** Storage of personal property by Tenant in Premises or in any other portion of Property shall be at Tenant's risk and Landlord shall not be responsible for any loss or damage. Tenant has been advised to obtain renter's insurance and shall be solely responsible to insure Tenant's personal property against loss or damage.

20. **Right of Access, Signage.** Upon 24 hours advance notice to Tenant, Landlord shall have the right Monday through Saturday from 9:00 a.m. to 8:00 p.m. to access to Premises or Property to inspect, repair, maintain the same and/or to show the Property to prospective buyers. In the case of emergency, Landlord may enter Premises or Property at any time to protect life and prevent damage to Premises and Property. In addition, during the last 10 days of the term of the Lease, and during any period when Premises is being leased month to month, Landlord may also place a "for rent" or "for sale" sign in the yard or on the exterior of any dwelling on Property, may install a lockbox and may show Premises to prospective tenants or purchasers during reasonable hours. Tenant agrees to cooperate with Landlord and Broker who may show Premises to prospective tenants or buyers. In the event a lockbox is installed, Tenant shall secure jewelry and other valuables and agrees to hold Landlord harmless for any loss thereof. For each occasion where the access rights described above are denied, Tenant shall pay Landlord the sum of $ 100 as liquidated damages; it being acknowledged that Landlord shall be damaged by the denial of access, that Landlord's actual damages are hard to estimate, and that the above amount represents a reasonable pre-estimate of Landlord's damages rather than a penalty.

(4) Notwithstanding any provision to the contrary contained herein, Tenant and Owner/Landlord each hereby direct Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect its negotiating position.

b. **Designated Agency Assignment:** *[Applicable only if the designated agency has been selected above]*
Broker has assigned _na_____ to work exclusively with Tenant as Tenant's designated agent and _na_____ to work exclusively with Owner/Landlord as Owner/Landlord's designated agent. Each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

B. **Material Relationship Disclosure:** The Broker and/or affiliated licensees have no material relationship with either client except as follows: _na_____.
(A material relationship means one actually known of a personal, familial or business nature between the Broker and/or affiliated licensees and a client which would impair their ability to exercise fair judgment relative to another client.)

C. **Brokerage:** The Broker(s) identified herein have performed valuable brokerage services and are to be paid a commission pursuant to a separate agreement or agreements. Unless otherwise provided for herein, the Listing Broker will be paid a commission by the Landlord, and the Leasing Broker will receive a portion of the Listing Broker's commission pursuant to a cooperative brokerage agreement.

D. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") makes certain standard real estate forms available to its members. These GAR forms are frequently provided to the parties in real estate transactions by the REALTORS® with whom they are working. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

E. **Property Management:** Broker is ☐, OR, is not ☒ the authorized agent of Landlord for the purposes of managing Property in accordance with a separate management agreement. If there is an agreement between Landlord and Broker to manage Property: (1) Tenant agrees to communicate with Broker on all issues relating to or arising out of this Lease Agreement; (2) Broker shall have the power and legal authority to exercise the rights of the Landlord hereunder, (3) Tenant shall pay the rent due hereunder to Broker at the address of Broker specified herein or at such other address of which Broker may give notice to Tenant, and (4) subject to the management agreement, Broker shall perform the obligations of Landlord hereunder. The termination of the management agreement shall not terminate this Lease.

28. **Exhibits.** All exhibits attached hereto listed below or referenced herein are made a part of this Lease. If any such exhibit conflicts with any preceding paragraph, said exhibit shall control:

**Pet Exhibit**

**SPECIAL STIPULATIONS.** The following Special Stipulations, if conflicting with any exhibit or preceding paragraph, shall control:

Tenant, Deborah Baker will give landlord a $200 pet deposit at Move in Inspection prior to Oct. 16, 2009. Deposit may be refundable at end of lease if pet doesn't cause any harm to property during term of lease. See Pet Exhibit Attached.

Landlord to leave lawn mower, and gas grill to be used by tenant Deborah Baker. If either appliance breaks, landlord not repsonsible for repairing.

Playground equipment to be moved by landlord from yard prior to tenant taking posession.

If landlord gets any notices from HOA that yard or house is unsightly due to fault of tenant, and they fine the owner, then tenant agrees to pay fine to HOA.

Rent for the month of Oct. 16- Oct. 31, 2009 shall be prorated and paid prior to move in date of October 16, 2009 in the amount of $606. 67 to landlord.

Broker commission in the amount of one month's rent ($1,300) shall be due to listing and tenant broker split 50/50 and shall be paid by November 15, 2009.

*Landlord will fix garbage disp. prior to move in.* /KD/ /DLB/

☐ Mark box if additional pages are attached.

/KD/ /DLB/

21. **Rules and Regulations.**
    A. Tenant is prohibited from adding, changing or in any way altering locks installed on the doors of Premises without prior written permission of Landlord. If all keys to Premises and Property are not returned when Tenant vacates Premises, Landlord may charge a re-key charge in the amount of $ 0_____.
    B. Motor vehicles with expired or missing license plates, non-operative vehicles, boats, trailers, RVs and campers are not permitted on Property. Any such vehicle may be removed by Landlord at the expense of Tenant for storage or for public or private sale, at Landlord's option, and Tenant shall have no right or recourse against Landlord thereafter.
    C. Other than normal household goods in quantities reasonably expected in normal household use, no goods or materials of any kind or description which are combustible would increase fire risk or increase the risk of other casualties, shall be kept in or placed on Property.
    D. No nails, screws or adhesive hangers except standard picture hooks, shade brackets and curtain rod brackets may be placed in walls, woodwork or any part of Premises.
    E. No pets are allowed unless the exhibit entitled "Pet Exhibit" is attached to this Lease.
    F. Tenant shall not, on or in Property, improperly dispose of motor oil, paints, paint thinners, gasoline, kerosene or any other product which can cause environmental contamination on or in Property.
    G. No waterbeds are allowed in Premises without written consent of Landlord.
    H. No space heaters or window air conditioning units shall be used to heat or cool Premises except with the written consent of Landlord.
    I. No window treatments currently existing on any windows shall be removed or replaced by Tenant without the prior written consent of Landlord.
    J. Tenant shall comply with all posted rules and regulations governing the use of any recreational facilities, if any, located on Property.
    K. Tenant shall comply with all posted Rules and Regulations governing the parking of motor vehicles on Property or the use of driveways, sidewalks and streets on Property.
    L. Tenant shall not skateboard, skate, rollerblade or bicycle on Property without wearing proper safety equipment.
    M. Any location and means of installation and repair and/or maintenance of any telephone, cable TV, satellite, Internet or data wiring and/or systems are the sole responsibility of Tenant, but must be approved, in advance, by Landlord. Landlord does not warrant and shall not be responsible for any portion of any telephone, cable TV, satellite, Internet or data wiring and/or systems serving Property.
    N. Tenant shall be prohibited from improving, altering or modifying the Property during the term of this Agreement without the prior written approval of the Landlord. Any improvements, alterations or modifications approved by Landlord shall be deemed to be for the sole benefit of Tenant and Tenant expressly waives all rights to recover the cost or value of the same. Any improvements, alterations or modifications of the Property made by Tenant without the approval of Landlord shall be deemed to be damage done to the Property by Tenant.
    O. Tenant shall keep all utilities serving the Property on at all times during the term of the Lease and through the completion of the Move Out Inspection including but not limited to garbage, water, electric, and gas. Should Tenant fail to keep utilities on through the Move Out Inspection Tenant shall pay Landlord as additional rent the total cost of reconnecting the utilities and a administrative fee of $ 0_____.

22. **Default.**
    A. **Default Generally:** Tenant shall be in default of this Lease upon the occurrence of any of the following:
        1. Tenant violates the Rules and Regulations set forth herein or otherwise fails to abide by the terms and conditions of this Lease. Prior to terminating the Lease for either of the above reasons Landlord shall give Tenant notice of the default and a 3 day opportunity to cure the same except in situations where the default is incapable of being cured within that time frame or the nature of Tenant's default, if not cured, poses a risk of damage or injury to Landlord, Landlord's property, other persons or the property of others immediately as determined in the sole discretion of Landlord.
        2. Tenant fails to cure any violation of Rules and Regulations set forth herein, or otherwise fails to abide by and perform any of the obligations, terms, conditions or provisions of this Lease within three days after Landlord delivers notice of the same to Tenant.
        3. Tenant violates the Rules and Regulations set forth herein three times during the term of the Lease regardless of whether such violations are cured.
        4. Tenant files a petition in bankruptcy (in which case this Lease shall automatically terminate and Tenant shall immediately vacate the Premises leaving it in the same condition it was in on the date of possession, normal wear and tear excepted.)
        5. Tenant fails to timely pay rent or other amounts owed to Landlord.
        6. Tenant fails to reimburse Landlord for any damages, repairs and costs to the Premises or Property (other than normal wear and tear) caused by the actions or neglect of Tenant or members of Tenant's household and their invitees, licensees and guests. All rights and remedies available to Landlord by Law or in this Lease shall be cumulative and concurrent.
    B. **Effect of Default:** If Tenant defaults under any term, condition or provision of this Lease, Landlord shall have the right to terminate this Lease by giving notice to Tenant and to pursue all available legal and equitable remedies to remedy the default. All rent and other sums owed to Landlord through the end of the Lease term shall immediately become due and payable upon the termination of the Lease due to the default of Tenant. Such termination shall not release Tenant from any liability for any amount due under this Lease. All rights and remedies available to Landlord by law or in this Lease shall be cumulative and concurrent.

23. **Destruction of Property.**
    A. If flood, fire, storm, mold, other environmental hazards that pose a risk to the occupants health, other casualty or Act of God shall destroy (or so substantially damage as to be uninhabitable) Premises, rent shall abate from the date of such destruction. Landlord or Tenant may, by written notice, within 30 (thirty) days of such destruction, terminate this Lease, whereupon rent and all other obligations hereunder shall be adjusted between the parties as of the date of such destruction.
    B. If Premises is damaged but not rendered wholly untenable by flood, fire, storm, or other casualty or Act of God, rent shall abate in proportion to the percentage of Premises which has been damaged and Landlord shall restore Premises as soon as is reasonably practicable whereupon full rent shall commence.
    C. Rent shall not abate nor shall Tenant be entitled to terminate this Lease if the damage or destruction of Premises, whether total or partial, is the result of the negligence of Tenant or Tenant's household or their invitees, licensees, or guests.

24. **Mortgagee's Rights.** Tenant's rights under this Lease shall at all times be automatically junior and subordinate to any deed to secure debt which is now or shall hereafter be placed on Property. If requested, Tenant shall execute promptly any certificate that Landlord may request to effectuate the above.

25. **Disclaimer.**
    A. **General:** Tenant and Landlord acknowledge that they have not relied upon any advice, representations or statements of Brokers and waive and shall not assert any claims against Brokers involving the same. Tenant and Landlord agree that no Broker shall have any responsibility to advise Tenant and/or Landlord on any matter including but not limited to the following except to the extent Broker has agreed to do so in a separately executed Property Management Agreement: any matter which could have been revealed through a survey, title search or inspection of Property; the condition of Property, any portion thereof, or any item therein; building products and construction techniques; the necessity or cost of any repairs to Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this transaction; the availability and cost of utilities or community amenities; the appraised or future value of Property; any condition(s) existing off Property which may affect Property; the terms, conditions and availability of financing; and the uses and zoning of Property whether permitted or proposed. Tenant and Landlord acknowledges that Broker is not an expert with respect to the above matters and that, if any of these matters or any other matters are of concern, Tenant should seek independent expert advice relative thereto. Tenant and Landlord acknowledges that Broker shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such tasks clearly fall outside the scope of real estate brokerage services.
    B. **Neighborhood Conditions:** Tenant acknowledges that in every neighborhood there are conditions which different tenants may find objectionable. It shall be Tenant's duty to become acquainted with any present or future neighborhood conditions which could affect the Property including without limitation land-fills, quarries, high-voltage power lines, cemeteries, airports, stadiums, odor producing factories, crime, schools serving the Property, political jurisdictional maps and land use and transportation maps and plan. If Tenant is concerned about the possibility of a registered sex offender residing in a neighborhood in which Tenant is interested, Tenant should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov

26. **Other Provisions.**
    A. **Time of Essence:** Time is of the essence of this Lease.
    B. **No Waiver:** Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this Lease or any of the rules and regulations set forth herein shall not operate as a waiver of any such violation or of Landlord's right to insist on prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any such violation. No provision, covenant or condition of this Lease may be waived by Landlord unless such waiver is in writing and signed by Landlord.
    C. **Definitions:** Unless otherwise specifically noted, the term "Landlord" as used in this Lease shall include its representatives, heirs, agents, assigns, and successors in title to Property and the term "Tenant" shall include Tenant's heirs and representatives. The terms "Landlord" and "Tenant" shall include singular and plural, and corporations, partnerships, companies or individuals, as may fit the particular circumstances. The term "Binding Agreement Date" shall mean the date that this Lease has been signed by the Tenant and Landlord and a fully signed and executed copy thereof has been returned to the party making the offer to lease.
    D. **Joint and Several Obligations:** The obligations of Tenant set forth herein shall be the joint and several obligations of all persons occupying the Premises.
    E. **Entire Agreement:** This Lease and any attached addenda and exhibits thereto shall constitute the entire Agreement between the parties and no verbal statement, promise, inducement or amendment not reduced to writing and signed by both parties shall be binding.
    F. **Attorney's Fees, Court Costs and Costs of Collection:** Whenever any monies due hereunder are collected by law or by attorney at law to prosecute such an action, then both parties agree that the prevailing party will be entitled to reasonable attorney's fees, plus all court costs and costs of collection.
    G. **Indemnification:** Tenant agrees to indemnify and hold Landlord and Broker harmless from and against any and all injuries, damages, losses, suits and claims against Landlord and/or Broker arising out of or related to: (1) Tenant's failure to fulfill any condition of this Lease; (2) any damage or injury happening in or to Property or to any improvements there on as a result of the acts or omissions of Tenant or Tenant's family members, invitees or licensees; (3) Tenant's failure to comply with any requirements imposed by any governmental authority; (4) any judgment, lien or other encumbrance filed against Property as a result of Tenant's actions and any damage or injury happening in or about Property to Tenant or Tenant's family members, invitees or licensees (except if such damage or injury is caused by the intentional wrongful acts of Landlord or Broker); (5) failure to maintain or repair equipment or fixtures, except where Landlord and/or Broker use their best efforts to make the necessary repairs within a reasonable time period and Tenant covenants not to sue Landlord or Broker with respect to any of the above-referenced matters; (6) Owner of the Property not paying or keeping current with any mortgage or property taxes on the Property or not fulfilling the Owner's obligations under this lease. For the purpose of this paragraph, the term "Broker" shall include Broker and Broker's affiliated licensees and employees.
    H. **Notices:**
       1. **All Notices Must Be In Writing.** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination or vacating and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice.
          ☒ (Check here if Broker cannot accept notice for Landlord. If this box is checked, paragraph H2 below shall not be a part of this Lease.)
       2. **When Notice to Broker is Notice to Broker's Client.** Except in cases where the Broker is a practicing designated agency, notice to the Broker or the affiliated licensee of Broker representing a party in the transaction shall for all purposes herein be deemed to be notice to that party. In any transaction where the Broker is a practicing designated agency, only notice to the affiliated licensee designated by Broker to represent the party in the transaction shall be notice to that party. Personal delivery of notice may only be delivered to the person intended to receive the same.

3. **Method of Delivery of Notice.** Subject to the provisions herein, all notices shall be delivered either: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX); or (4) by registered or certified U. S. mail, pre-paid return receipt requested.
4. **When Notice Is Deemed Received.** Except as may be provided herein, a notice shall not be deemed to be given, delivered or received until it is actually received. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent. Notice sent by FAX to a Broker shall only be sent to the FAX number of the Broker, if any, set forth herein: (a) Personal delivery of notice to a designated agent shall only be deemed to be received when it is actually received by the designated agent or delivered to the office of the Broker in which the agent is rostered, at a time when an agent or employee of the Broker is there to receive it; (b) Personal delivery of notice to a Broker shall only be deemed to be received when it is: (1) actually received by the Broker (if the Broker is a person); (2) actually received by an agent acting on behalf of the Broker in the transaction in which notice is being sent; or (3) delivered to either the main office of the Broker or the office of the Broker in which the agent representing the Broker is rostered at a time when an agent or employee of the Broker is there to receive it.
5. **Notice by Fax or E-Mail to a Broker or Affiliated Licensee of Broker.** Notices by fax or e-mail to a Broker or the affiliated licensee of a Broker may only be sent to the e-mail address or fax number, if any, of the Broker or the affiliated licensee of the Broker set forth in the Broker/Licensee Information section of the signature page of this Agreement or subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures set forth herein. If no fax number or e-mail address is included in the Broker/Licensee Contact Information section of the signature page of this Agreement (or is subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures, then notice by the means of communication not provided shall not be valid for any purpose herein. Notice to a Broker or the affiliated licensee of Broker who is working with, but not representing a party, shall not be deemed to be notice to that party.
6. **Certain Types of Signatures Are Originals.** A facsimile signature shall be deemed to be an original signature for all purposes herein. An e-mail notice shall be deemed to have been signed by the party giving the same if the e-mail is sent from the e-mail address of that party and is signed with a "secure electronic signature" as that term is defined under Georgia Law.

I. **Appliances:** The following appliances are in Property and included in this Lease: __dishwasher, range, microwave__

Tenant acknowledges that Tenant has inspected these appliances and that the same are in good working order and repair.
J. **Keys:** Landlord may release keys to Property to any of the occupants listed herein.
K. **Waiver of Homestead Rights:** Tenant for himself and his family waives all exemptions or benefits under the homestead laws of Georgia.
L. **Governing Law:** This Lease may be signed in multiple counterparts and shall be governed by and interpreted pursuant to the laws of the State of Georgia. This Lease is not intended to create an estate for years on the part of Tenant or to transfer to Tenant any ownership interest in the Property.
M. **Security Disclaimer:** Tenant acknowledges that: (1) crime can occur in any neighborhood including the neighborhood in which Property is located; and (2) while Landlord may from time to time do things to make Property reasonably safe, Landlord is not a provider or guarantor of security in or around Property. Tenant acknowledges that prior to occupying Property, Tenant carefully inspected all windows and doors (including the locks for the same) and all exterior lighting and found these items: (a) to be in good working order and repair; and (b) reasonably safe for Tenant and Tenant's household and their invitees, licensees and guests knowing the risk of crime. If during the term of the Lease any of the above items become broken or fall into disrepair, Tenant shall give notice to Landlord of the same immediately.
N. **Rental Application:** Tenant's rental application is ☒, OR, is not ☐ attached hereto as an exhibit. If the rental application is attached hereto and it is later discovered that the information disclosed therein by Tenant was incomplete or inaccurate at the time it was given, Tenant shall be in default of this Lease and Landlord may pursue any and all of Landlord's remedies regarding said default.

27. **Agency Brokerage and Property Management.**
    A. **Agency Disclosure:** In this Lease, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and, where the context would indicate, the Broker's affiliated licensees and employees. No Broker in this transaction shall owe any duty to Tenant or Owner/Landlord greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
        1. **No Agency Relationship.** Tenant and Owner/Landlord acknowledge that, if they are not represented by a Broker, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
        2. **Listing Broker.** Broker working with the Owner/Landlord is identified on the signature page as the "Listing Broker"; and said Broker is ☒, OR, is not ☐ representing Owner/Landlord;
        3. **Leasing Broker.** Broker working with Tenant is identified on the signature page as "Leasing Broker"; and said Broker is ☒ OR is not ☐ representing Tenant; and
        4. **Dual Agency or Designated Agency.** If Tenant and Owner/Landlord are both being represented by the same Broker, a relationship of either designated agency ☐ OR, dual agency ☐ shall exist.
            a. **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above]* Tenant and Owner/Landlord are aware that Broker is acting as a dual agent in this transaction and consent to the same. Tenant and Owner/Landlord have been advised that:
                (1) In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
                (2) As dual agent, Broker will disclose all known adverse, material facts relevant to the transaction to all parties in the transaction, except for information made confidential by request or instructions from either client, and which is not otherwise required to be disclosed by law;
                (3) Tenant and Owner/Landlord do not have to consent to dual agency and, the consent of the Tenant and Owner/Landlord to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements; and

**IN WITNESS WHEREOF**, the parties hereto have set their hand and seal the day and year first written above.

_____    _____    _Kerri Seagraves_____   _10/8/09_
Tenant's Signature                  Date         Landlord's Signature      Date

            **Deborah  Baker**                           **Kerri  Seagraves**
Print or Type Name                               Print or Type Name

_Deborah L Baker_   _10/8/09_                    _____    _____
Tenant's Signature    Date                       Landlord's Signature      Date

_____                  _____
Print or Type Name                               Print or Type Name

      **bakersfamily5@comcast.net**                    **kerri.seagraves@cobbk12.org**
Tenant's E-Mail Address                          Landlord's E-Mail Address


_____                  _____
Tenant's E-Mail Address                          Landlord's E-Mail Address

**KELLER WMS Realty Signature Partners**         **Keller Williams Across Atlanta**
Leasing Broker                                   Listing Broker

**KWWC01**          **H-45906**                  **KWPC01**          **H-47369**
MLS Office Code    Brokerage Firm License Number MLS Office Code    Brokerage Firm License Number

Broker's Phone# _678-631-1700_ & FAX# _678-631-1701_    Broker's Phone# _(770) -87-4-531_ & FAX# _404-521-4226_

By: _Cathy Stok_                                 By: _Jaydee A Smith_
Broker or Broker's Affiliated Licensee           Broker or Broker's Affiliated Licensee

      **A. Douglas Team/ Cathy Mintz-Stok**             **Jaydee A. Smith- AARE Team**
Print or Type Name                               Print or Type Name

         **marycat95@yahoo.com**                          **jaydeesmith@bellsouth.net**
Broker's or Broker's Affiliated Licensee E-Mail Address   Broker's or Broker's Affiliated Licensee E-Mail Address

              **250898**                                        **203895**
Leasing Agent's Georgia Real Estate License Number    Leasing Agent's Georgia Real Estate License Number

Multiple Listing Number _____**3922366**_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: ) Case No.: 10-79320
)
Deborah Lynn Baker ) Judge: crm
)
) Chapter: 7

Debtor(s).

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the 20 day of August, 1976, I served a copy of Motion for Relief for Stay, which was filed in this bankruptcy matter on the 7 day of July, 200_.

Mode of service (circle one): (MAIL)    HAND DELIVER

Name and Address of each party served:
Hicks, Casey & Foster, P.C.
136 North Fairground Street Suite 100
Marietta, GA 30060

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: 7/7/2010     Signature: Kerri Seagraves

Printed Name: Kerri Seagraves

Address: 5549 Wright Rd
Powder Spts. GA 30127

Phone: 404-405-0222

```
            U. S. BANKRUPTCY COURT
          NORTHERN DISTRICT OF GEORGIA
              ATLANTA DIVISION

              # 01143211 - YL
                July 7, 2010


  Code      Case No      Qty       Amount    By

  ST1      10-79320       1       $150.00   CA
    Judge  - C. Ray Mullins
    Debtor - D. L. BAKER


  TOTAL:                           $150.00


  FROM: Kerri L. Seagraves
        5549 Wright Road
        Powder Springs, GA 30127
        404-405-0222
```